F. W. Hullinger v. People's Publishing Co.*

Where a contract of employment stipulated that plaintiff was to act as agent of defendants in a certain city, and was conditioned on the agent selling a certain amount of defendants' goods each month, and provided that, should the sales fall below the minimum for any month, if the sales should be sufficient for the succeeding months to bring the average up to the stipulated minimum amount, this was to be regarded as a ful-

*Affirmed by Supreme Court, 73 St. 363.

filment of the contract, with further stipulations as to the amount of plaintiff's salary and commissions, to be paid out of such sales, defendant also agreeing to maintain an office for plaintiff and furnish such things as were necessarily appurtenant to a branch agency; in such case the fact that plaintiff's sales fell below the minimum amount for the first month of his agency is no excuse nor justification for defendants' failure to perform their part of the contract.

HOSEA, J.; FERRIS and HOFFHEIMER, JJ., concur.

Error to special term.

In the view we take of the contract in this case, it will not be necessary to consider the questions involved in its proposed reformation. The contract as it exists furnishes sufficient ground for the action of the reviewing court.

We find that the contract is one of employment in which the defendants were to do and furnish certain things, and pay a monthly salary, in consideration of which plaintiff was to serve them as their general agent at Chicago for a period of a year. On each side the performance of certain stipulations was the condition precedent of performance by the other party. The defendants were to rent and fit up an office, provide stationery, blanks, etc., letters of credit, circulars, and books to be sold; and the plaintiff was to establish and superintend agencies, and sell the books at certain prices, making monthly reports and remittances to defendant, and was to receive as his compensation a salary payable monthly, and in addition thereto a commission upon sales made.

The controversy here arises principally upon the fifth and sixth clauses of the contract, which are as follows:

"(5) The success of the business depends upon a reasonable amount of books sold, and it is agreed and understood that the sales each month shall amount to $250, which shall be considered the minimum amount of business necessary to a proper fulfillment of this contract. If the sales of any month should not amount to the minimum amount named above, and, during the succeeding months, sales should be in excess of said minimum amount, to make up an average

of $250 per month, his contract is then fulfilled by the party of the second part.

"(6) It is mutually understood and agreed by the parties hereto, that the second party shall have the right and authority to collect all moneys for business done through said office. At the end of each month, after deducting from the receipts of said office the amount of his salary, necessary expenses, and commissions due him at that time, he shall remit the balance to the said first parties at their office in the city of Cincinnati.

"The parties of the first part will then replace stock sold during the previous month by party of the second part without charge or expense to said second party.

"In case the minimum amount of business required to be transacted shall not be sufficient to pay necessary expenses, commission, salary and cost of replacing stock sold, the deficiency shall be made good by said first parties at the end of each month."

The testimony shows that at the end of the first month the sales were not sufficient to cover the salary and rent of office; and the defendants failed and refused then and thereafter to make good the deficiency. The plaintiff, being practically at the mercy of defendants, endeavored for a time to keep the business moving at his own expense, but was unable to do so, and was finally dispossessed and the office effects and stock were sold by the landlord for rent.

The court below, although "considerably perplexed as to whether the defendants violated the contract in not paying the rent," resolved the doubt against the plaintiff upon a construction of the contract making the obligation of the defendants to pay rent, etc., conditional upon the minimum sale of $250 per month by plaintiff; and therefore found that the plaintiff had failed to perform, and had no remedy.

As we read. the contract, it permits of no such doubt. Taking clause 5 as an entirety, it is plain that the parties were establishing an average over the period of employment, and not a minimum applicable to each month considered separately and apart from every other. Not only is this evident from clause 5, but it is confirmed by the

deficiency stipulation in clause 6, providing that when the deficiency was so great as that the amount received was not sufficient to cover these necessary expenses, the defendants would nevertheless pay them.

The circumstances attending the making of this contract show that this arrangement was not unreasonable, nor do they imply any special liberality on the part of the defendants. The plaintiff was being employed as their agent, to establish their business in a city strange to him. To secure themselves against possible failure on his part, they required him to deposit with them $800, which, in case of the faithful and successful completion of this contract to their satisfaction, was to be returned to him. They were thus indemnified to this extent against possible loss.

It was naturally to be expected that in taking up a new business at a strange place the first few months would show but meagre returns; and the provisions of the contract above quoted were manifestly drawn to cover this and other contingencies that might be expected to arise. There is nothing in the contract relative to the purpose of this deposit of money; and the claim in argument that it was to cover the value of books on hand is specious and rests upon nothing but a coincidence in amounts, which, if not purely accidental, may be regarded as evidence of an adroit design. The fact, however, the defendants required and obtained satisfactory references as to plaintiff's honesty before making the contract, sufficiently negatives the theory on which the argument is based.

Having this large amount of plaintiff's money in their hands, the defendants were perfectly safe in making a time-limited contract to pay plaintiff's salary and the rent monthly, to be taken out of the proceeds of sales, with an agreement to make good the deficiency, if any; because the plaintiff stood to lose his entire deposit unless his sales for the year should average $250 per month. In other words, any deficiency payments would come out of his own deposit. As the sum deposited was sufficient to cover his salary for about six and one-half months, the defendants could well afford to take the risk of the minimum sale mark being

attained within that period by a man of high character and attainments, such as plaintiff is shown to be, under the stimulus of disaster to himself in case of failure.

In our view of the contract, the failure of the defendants to comply with their obligation to make good the deficiency at the expiration of the first and immediately succeeding months was a breach wholly indefensible, and renders them liable for the consequences thereof to the plaintiff. The judgment rendered by the court below must, therefore, be set aside and reversed, and it is so ordered.

Proceeding to render such judgment as should have been rendered by the court below, the finding and judgment of this court will be entered in behalf of plaintiff and against defendants upon the contract as set forth in the second cause of action; and the cause is remanded to the court at special term for an inquiry of damages by a jury, or by the court if the parties shall waive a jury.

Judgment at special term reversed; judgment for plaintiff upon the second cause of action, and cause remanded for inquiry of damages.

*A. M. Warner,* for plaintiff in error.
*R. S. Fulton,* for defendant in error.